Thomas E Lauria
State Bar No. 11998025
Craig H. Averch
State Bar No. 01451020
WHITE & CASE LLP
200 South Biscayne Blvd., Suite 3100
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

ATTORNEYS FOR THE MIRANT
ENTITIES

Jeff P. Prostok
State Bar No. 16352500
Blake L. Berryman
State Bar No. 02252980
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

ATTORNEYS FOR THE NEW YORK
DEBTORS

**THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| | ) | |
| MIRANT CORPORATION, et al., | ) | Case No. 03-46590 (DML) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |
| MIRANT CORPORATION, MIRANT ENERGY | ) | Adversary Case No. 06-_____ |
| TRADING, LLC, MIRANT NY-GEN, LLC, | ) | |
| MIRANT LOVETT, LLC, and MIRANT | ) | |
| BOWLINE, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| CONSOLIDATED EDISON COMPANY OF | ) | |
| NEW YORK, INC. and ORANGE AND | ) | |
| ROCKLAND UTILITIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**TIER IV OBJECTIONS TO PROOF OF CLAIM NO. 8036 FILED BY CONSOLIDATED
EDISON COMPANY OF NEW YORK, INC. AND PROOF OF CLAIM NO. 5517,
AMENDED BY CLAIM NO. 8411, FILED BY ORANGE & ROCKLAND UTILITIES,
INC.; AND COUNTERCLAIMS AGAINST ORANGE & ROCKLAND UTILITIES, INC.
AND CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.**

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 1

TO THE HONORABLE D. MICHAEL LYNN,
UNITED STATES BANKRUPTCY JUDGE:

The Mirant Entities, as defined in paragraph 20, Mirant NY-Gen, LLC, Mirant Lovett, LLC, and Mirant Bowline, LLC (collectively, excluding the Mirant Entities, the "New York Debtors"), file this Tier IV Objection to Proof of Claim No. 8036 (the "ConEd Claim") filed by Consolidated Edison Company of New York, Inc. ("ConEd") and Proof of Claim No. 5517, as amended by Claim No. 8411 (the "O&R Claim," together, the "Claims"), filed by Orange and Rockland Utilities, Inc. ("O&R," collectively, with ConEd, the "Defendants"). Plaintiffs Mirant Corporation ("Mirant"),[1] Mirant Energy Trading, LLC ("MET") and the New York Debtors also file these Counterclaims for Avoidance of Fraudulent Obligations, Avoidance and Recovery of Fraudulent Transfers, Breach of Contract and Declaratory Relief against Defendants and respectfully allege:

## NATURE OF THE ACTION

1.      The Mirant Entities and the New York Debtors seek disallowance of portions of the Claims for the reasons stated in their objections.

2.      Mirant seeks to avoid certain obligations incurred by MC 2005, LLC ("Old Mirant") as fraudulent obligations, pursuant to 11 U.S.C. § 544 and applicable state law.

3.      Mirant and MET seek to avoid certain transfers of interests in property made by Old Mirant and Mirant Americas Energy Marketing, LP (referred to hereinafter as "MAEM" and renamed MRAEM, LP prior to its dissolution in March 2006) as fraudulent transfers, pursuant to

---

[1] "Mirant" refers to the company currently named "Mirant Corporation," a Delaware company formerly known as "Newco 2005 Corporation." "Old Mirant" refers to the company currently named "MC 2005, LLC," which is the Delaware company that was formerly known as "Mirant Corporation."

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 2

11 U.S.C. § 544 and applicable state law, and to recover the property transferred or the value of the property, with interest, pursuant to 11 U.S.C. § 550.

4.     The New York Debtors seek to recover amounts owing and to confirm defense and indemnification obligations under certain purchase agreements.

## JURISDICTION AND VENUE

5.     The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and the Standing Order of Referral of Cases to Bankruptcy Judges in the Northern District of Texas, dated August 3, 1984.

6.     This proceeding relates to the chapter 11 cases titled *In re Mirant Corporation, et al.*, Case No. 03-46590 (DML) (Jointly Administered) (the "Main Case"), pending in the United States Bankruptcy Court for the Northern District of Texas, Forth Worth Division.  This is a core proceeding pursuant to 28 U.S.C. § 157, and, in particular, 28 U.S.C. § 157(b)(2)(B), (C), (H) and (O), and Plaintiffs consent to the entry of final orders or a judgment by the bankruptcy judge.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 28 U.S.C. § 1409(a).

## PARTIES

8.     Plaintiff Mirant is a corporation organized under the laws of the State of Delaware with its principal office at 1155 Perimeter Center West, Atlanta, Georgia 30338.

9.     Plaintiff MET is a limited liability company organized under the laws of the State of Delaware with its principal office at 1155 Perimeter Center West, Atlanta, Georgia 30338.

10.     Plaintiff Mirant NY-Gen, LLC ("Mirant NY-Gen") is a limited liability company organized under the laws of the State of Delaware with its principal office at 1155 Perimeter Center West, Atlanta, Georgia 30338.  Mirant NY-Gen was formerly known as Southern Energy

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 3

NY-Gen, L.L.C. At all times material to this Complaint, Old Mirant owned, directly or indirectly, 100% of the beneficial equity interest in Mirant NY-Gen.

11. Plaintiff Mirant Lovett, LLC ("Mirant Lovett") is a limited liability company organized under the laws of the State of Delaware with its principal office at 1155 Perimeter Center West, Atlanta, Georgia 30338. Mirant Lovett was formerly known as Southern Energy Lovett, L.L.C. At all times material to this Complaint, Old Mirant owned, directly or indirectly, 100% of the beneficial equity interest in Mirant Lovett.

12. Plaintiff Mirant Bowline, LLC ("Mirant Bowline") is a limited liability company organized under the laws of the State of Delaware with its principal office at 1155 Perimeter Center West, Atlanta, Georgia 30338. Mirant Bowline was formerly known as Southern Energy Bowline, L.L.C. At all times material to this Complaint, Old Mirant owned, directly or indirectly, 100% of the beneficial equity interest in Mirant Bowline.

13. Defendant ConEd is a corporation organized under the laws of the State of New York with its principal office at 4 Irving Place, New York, New York 10003-3598. ConEd is a subsidiary of Consolidated Edison, Inc. and is a regulated utility providing energy services in the State of New York.

14. Defendant O&R is a corporation organized under the laws of the State of New York with its principal office at One Blue Hill Plaza, Pearl River, New York 10965. O&R is a wholly owned subsidiary of Consolidated Edison, Inc. and is an electric and gas utility providing energy services in various counties in New York, New Jersey and Pennsylvania.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Mirant Entities and New York Debtors and the Bankruptcy Filings

15.     On July 14, 2003 (the "Petition Date"), and various dates thereafter, each debtor in the Main Case filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code, as amended.

16.     The Court has entered orders approving the joint administration of the debtors' chapter 11 cases in the Main Case.  The New York Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

17.     The Court also established December 16, 2003 (the "Claims Bar Date") as the last day to timely file a proof of claim against the debtors in the Main Case relating to claims that arose before the Petition Date.

18.     On April 7, 2004, this Court authorized the Office of the United States Trustee for the Northern District of Texas ("UST") to appoint an examiner in these cases to analyze certain potential causes of action and act as a referee with respect to certain disputes that arise among parties in interest.  The UST appointed William K. Snyder as the examiner in these cases.

19.     On June 8, 2004, the Court entered the *Order Establishing Procedures for Objections to Proofs of Claim* (docket no. 4233) (the "Procedures Order")[2] approving procedures for the filing of objections to proofs of claim filed against the debtors in the Main Case.

20.     Pursuant to an order dated December 9, 2005 (the "Confirmation Order") (docket no. 12569), the Court confirmed the *Amended And Restated Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and Its Affiliated Debtors* dated December 9,

---

[2] The Procedures Order is available on the internet at www.alixpartners.com/cms.

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 5

2005 (attached as <u>Exhibit 1</u> to the Confirmation Order, the "Plan") with respect to certain of the debtors in the Main Case (collectively, the "Mirant Entities") other than the New York Debtors.

21.     The Effective Date of the Plan with respect to the Mirant Entities was January 3, 2006.

22.     In accordance with section 8.12 of the Plan, all Causes of Action (as defined in the Plan) of Old Mirant and MAEM were transferred to Mirant on the Effective Date.

23.     Section 8.3 of the Plan further provides that all assets of MAEM and other "Trading Debtors," excluding certain specified exceptions, would be transferred to MET.

24.     On January 31, 2006, substantially all assets of the Trading Debtors (including MAEM) were transferred, conveyed, and/or assigned to MET.

**B.     The Purchase Agreements and Guaranties**

25.     Old Mirant is a Delaware limited liability company organized under the laws of the State of Delaware.  At all times material to this Complaint, Old Mirant owned, directly or indirectly, 100% of the beneficial equity interests in the New York Debtors and in MAEM.  Old Mirant was one of the chapter 11 debtors in the Main Case.

26.     On or after November 24, 1998, the New York Debtors and Defendants executed the following four purchase agreements (collectively, the "Purchase Agreements") to purchase Defendants' interests in certain power generating assets located in the State of New York:

> (a)     *Bowline Point Generating Station Sales Agreement.*  Mirant Bowline agreed to purchase the real and personal property constituting or used principally for power generation purposes at the Bowline Point Generating Station located in Rockland County, New York (the

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 6

"Bowline Generating Facility"). The purchase price was approximately $199,850,000.

(b)     *Bowline Adjacent Property Agreement.*  Mirant Bowline agreed to purchase a parcel of land consisting of approximately 98 acres adjacent to the Bowline Generating Facility (the "Bowline Property") for a purchase price of approximately $12,500,000.

(c)     *Lovett Generating Station Sales Agreement.*  Mirant Lovett agreed to purchase real and personal property, constituting or used principally for power generation purposes at the Lovett Generating Station located in Rockland County, New York (the "Lovett Generating Facility"). The purchase price was approximately $243,500,000.

(d)     *Gas Turbine and Hydroelectric Generating Station Sales Agreement.* Mirant NY-Gen agreed to purchase the Hillburn Gas Turbine, Shoemaker Gas Turbine, the Mongaup Hydroelectric Station, the Swinging Bridge Hydroelectric Station, the Rio Hydroelectric Station and an interest in the Grahamsville Hydroelectric Station (collectively, the "Turbines and Hydroelectric Stations") for a purchase price of approximately $20,440,000.

27.     On or after November 24, 1998, Old Mirant, then known as Southern Energy, Inc., executed the following two guaranties (collectively, the "Guaranties"), whereby Old Mirant guarantied certain obligations of the New York Debtors under the Purchase Agreements:

(a)     *Bowline Guaranty.*  Old Mirant guarantied the payment and performance obligations of Mirant Bowline under the *Bowline Point*

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 7

*Generating Station Sales Agreement* and the *Bowline Adjacent*

*Property Agreement*.

(b)     *Lovett, Gas Turbine and Hydroelectric Generating Facilities*

*Guaranty*.  Old Mirant guarantied the payment and performance

obligations of Mirant Lovett under the *Lovett Generating Station Sales*

*Agreement* and the payment and performance obligations of Mirant

NY-Gen under the *Gas Turbine and Hydroelectric Generating Station*

*Sales Agreement*.

28.     The Purchase Agreements were dated November 24, 1998, but provided that the

transactions would close on April 30, 1999, or some other date as agreed upon by the parties.

The transactions closed on June 30, 1999 (the "Closing Date"), after the New York Public

Service Commission approved the transactions and after other conditions precedent had been

satisfied.

**C.     The Old Mirant Transfers**

29.     On or about the Closing Date, Old Mirant transferred approximately

$349,272,262 of its funds to O&R and $136,920,555 of its funds to ConEd (collectively, the

"Old Mirant Transfers") as the purchase price for the Defendants' interests in the Bowline

Generating Facility, the Bowline Property, the Lovett Generating Facility, and the Turbines and

Hydroelectric Stations.

**D.     The MAEM Transfer**

30.     MAEM is a limited partnership organized under the laws of the State of

Delaware.  At the time of the Purchase Agreements, MAEM was known as Southern Company

Energy Marketing, LP.

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 8

31.     As of December 27, 2000, Mirant NY-Gen, Mirant Lovett and Mirant Bowline collectively owed O&R a net amount of $3,987,435.45.  That figure results from subtracting $404,295.30 due from O&R for certain post-closing transactions from $4,391,730.84 due to O&R under the Purchase Agreements for post-closing adjustments.

32.     At the same time, O&R owed MAEM $6,350,247.75 for other post-closing transactions.

33.     On December 27, 2000, O&R, Mirant NY-Gen, Mirant Lovett, Mirant Bowline and MAEM reconciled the amounts then owed to or from O&R as follows:

      (a)     O&R cancelled its $3,987,435.45 in net claims against Mirant NY-Gen, Mirant Lovett and Mirant Bowline;

      (b)     O&R transferred $2,362,812.30 to Mirant Bowline by wire transfer;

      (c)     MAEM cancelled its $6,350,247.75 claim against O&R;

      (d)     Mirant NY-Gen cancelled $1,071,842.88 of indebtedness due to it from MAEM;

      (e)     Mirant Lovett agreed to pay $2,819,753.59 to MAEM at a future but unspecified date; and

      (f)     Mirant Bowline agreed to pay $2,458,651.28 to MAEM at a future but unspecified date.

34.     MAEM's cancellation of its $6,350,247.75 claim against O&R constituted a transfer of MAEM's property to O&R (the "MAEM Transfer").

35.     The Old Mirant Transfers and the MAEM Transfer are collectively referred to as the "Transfers."

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 9

**E.** **Liability Obligations Under the Purchase Agreements**

36.     The New York Debtors assumed certain liabilities (the "Assumed Liabilities")

with respect to the assets purchased under the Purchase Agreements (the "Purchased Assets").

Article 2.4 of the Purchase Agreements specifically sets forth the liabilities that were not

assumed and that remained the responsibility of O&R and/or ConEd (the "Excluded Liabilities").

37.     The Excluded Liabilities included those related to activities regarding Hazardous

Substances that occurred prior to the Closing Date:

> (c) any liabilities, obligations, or responsibilities relating to the disposal, storage, transportation, discharge, Release[3], recycling, or the arrangement for such activities, of Hazardous Substances[4] [or coal ash][5] that were generated at the Purchased Assets, at any off-site location, where the disposal, storage, transportation, discharge, Release, recycling or the arrangement for such activities at said off-site location occurred prior to the Closing Date, provided that for purposes of this Section, "off-site location" does not include any location to which Hazardous Substances (or coal ash) disposed of, discharged from, emitted from or Released at the Purchased Assets have migrated, including, but not limited to, surface waters that have received waste water discharges from the Purchased Assets.

(footnotes added).

38.     The Excluded Liabilities also include government penalties for actions and

liabilities that must be accrued by generally accepted accounting principles or FERC's Uniform

System of Accounts prior to the Closing Date:

---

[3] "Release" is defined as release, spill, leak, discharge, dispose of, pump, pour, emit, empty, inject, leach, dump or allow to escape into or through the environment.

[4] "Hazardous Substances" are defined as (a) any petrochemical or petroleum products, oil, radioactive materials, radon gas, asbestos in any form that is or could become friable, urea formaldehyde foam insulation and transformers or other equipment that contain dielectric fluid which may contain levels of polychlorinated biphenyls; (b) any chemicals, materials or substances defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "restricted hazardous materials," "extremely hazardous substances," "toxic substances," "contaminants" or "pollutants" or words of similar meaning and regulatory effect; or (c) any other chemical, material or substance, exposure to which is prohibited, limited or regulated by any applicable Environmental Law.

[5] Article 2.4(c) in each of the Purchase Agreements is the same with the exception that the Lovett agreement excludes coal ash, as indicated by the brackets.

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 10

. . . any fines or penalties imposed by a governmental agency or authority resulting from (A) an investigation or proceeding with respect to any act or occurrence arising prior to or on the Closing Date or (B) illegal acts, willful misconduct or gross negligence of the Seller prior to or on the Closing Date;

. . . any liabilities or obligations required to be accrued by the Seller in accordance with generally accepted accounting principles and/or the FERC Uniform System of Accounts on or before the Closing Date with respect to liabilities related to the Purchased Assets other than any liability assumed by Buyer under any provision of this Agreement, including without limitation, Section 2.3;

39.     In addition, O&R (and ConEd, with respect to the *Bowline Point Generating Station Sales Agreement*) (collectively, the "Sellers") made certain representations, warranties and covenants with respect to the assets, including the Purchased Assets, transferred under the Purchase Agreements.  Articles 5.6, 5.7, 5.12, 5.17, and 5.19 of the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement,* and the *Bowline Point Generating Station Sales Agreement*, and Article 7.16 of the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, set forth covenants and warranties the Sellers made as part of the consideration to Mirant NY-Gen, Mirant Lovett, and/or Mirant Bowline to enter into those agreements (the "Seller Covenants").

40.     In Article 5.6 of the Representations and Warranties of Seller section of the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement*, and the *Bowline Point Generating Station Sales Agreement*, the Sellers represented, warranted and covenanted that they possessed no non-disclosed liabilities relating to the business or operations of the Purchased Assets:

… Except as set forth in Schedule 5.6, to the Seller's knowledge, the Seller has no liability or obligation relating to the business or operations of the Purchased Assets ….of a nature required by generally accepted accounting principles to be reflected in a corporate balance sheet or disclosed in the notes thereto, which are not accrued or reserved in Seller Balance Sheet or disclosed in the notes thereto in accordance with generally accepted accounting principles, except those which either were incurred in the ordinary course of business, after the date of Seller

Balance Sheet, or those which in the aggregate are not material to the Purchased Assets.

41. The Sellers further agreed in Schedule 5.6 of the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement,* and the *Bowline Point Generating Station Sales Agreement* that the Sellers had nothing to disclose under Article 5.6.

42. In Article 5.7 of the Representations and Warranties of Seller section of the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement*, and the *Bowline Point Generating Station Sales Agreement*, the Sellers also represented, warranted and covenanted that since December 31, 1997, there had not been any damage, destruction or casualty loss which had a material adverse effect on the Purchased Assets.

43. Furthermore, in Article 5.12 of the Representations and Warranties of Seller section of the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement*, and the *Bowline Point Generating Station Sales Agreement*, the Sellers represented, warranted and covenanted that they were in compliance with all applicable Environmental Laws:

> Except as disclosed in Schedule 5.12(a)(i), to the Seller's knowledge, Seller holds, and is in compliance with, all permits, licenses, certificates and governmental authorizations ("Environmental Permits") required for the Seller to operate the Purchased Assets under applicable Environmental Laws, and Seller is otherwise in compliance with applicable Environmental Laws, which, individually or in the aggregate, are not reasonably likely to have a Material Adverse Effect.

44. Likewise, in Article 5.19 of the Representations and Warranties of Seller section of the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, the *Lovett*

*Generating Station Sales Agreement*, and the *Bowline Point Generating Station Sales Agreement*, the Sellers represented, warranted and covenanted:

> Seller is in compliance with all Permits, laws, statutes, orders, rules, regulations, ordinances, or judgments of any governmental or regulatory body or authority applicable to Purchased Assets, except for violations which, in the aggregate, would not have a Material Adverse Effect.

45.     In Article 7.16 of the Covenants of the Parties section of the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, O&R covenanted it would, at its own expense, be responsible for remediating soil contaminated by polychlorinated biphenyls ("PCBs") and polyaromatic hydrocarbons ("PAHs") from specified areas located at the Hillburn generating facility.

## F.     Indemnification Under the Purchase Agreements

46.     The Purchase Agreements also provide for indemnification.  Pursuant to Article IX of the Purchase Agreements, O&R and/or ConEd agreed to indemnify, defend and hold harmless Mirant NY-Gen, Mirant Bowline, and Mirant Lovett, as applicable, from and against any and all claims, liabilities, damages and costs asserted against or suffered by Mirant NY-Gen, Mirant Bowline, and Mirant Lovett, as applicable, and arising out of the Excluded Liabilities or arising from any breach of the Seller Covenants.

## G.     Relevant Deficiencies and Problems Related to the Purchased Assets

47.     During the past two years, the New York Debtors have discovered various deficiencies and problems with the Purchased Assets resulting in continuing liabilities, damages and costs.  Based on the New York Debtors' investigation to date, many of these liabilities, damages and costs are "Excluded Liabilities" under the Purchase Agreements and further result from breaches of the Seller Covenants.  Accordingly, the Sellers are obligated to indemnify the New York Debtors for the same.

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 13

48.     Deficiencies and problems at facilities that are Excluded Liabilities include: (a) improper closure at the Lovett coal ash management facility ("CAMF"); (b) a leaking underground pipeline at the Hillburn generating facility; (c) inadequate secondary containment storage capacity for oil tanks at the Lovett facility and at the Bowline facility; and (d) a sinkhole at the Swinging Bridge Dam near the Swinging Bridge Hydroelectric Station (collectively, the "Deficient Facilities").

### 1.     CAMF

49.     The CAMF is located adjacent to the Lovett facility.  It consists of a clay-lined, partially covered twelve (12) acre coal ash disposal area, leachate pump station and detention pond.

50.     On July 8, 2004, as supplemented on January 19, 2005, the New York State Department of Environmental Conservation ("NYSDEC") issued a notice of violation to Mirant Lovett for alleged improper closure techniques used for the CAMF.

51.     On May 16, 2005, the NYSDEC Staff filed a complaint with the NYSDEC against Mirant Lovett alleging improper closure techniques.  The complaint seeks a civil penalty of $100,000 and an order requiring Mirant Lovett to complete the investigative and restoration requirements set forth in the NYSDEC's Compliance Schedule.

52.     Mirant Lovett is contesting NYSDEC's position in an administrative proceeding in Albany, New York.  Mirant Lovett cannot be certain of the outcome of this proceeding or of the amount of liability, damages and costs it will incur as a result thereof.

53.     O&R implemented the improper closure techniques alleged by NYSDEC prior to the closing date of the *Lovett Generating Station Sales Agreement*.  O&R never received certification from the NYSDEC that O&R had properly completed stage one closure of the

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411, Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange & Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 14

CAMF.  Upon information and belief, O&R failed to complete the stage one closure of the CAMF in compliance with the requirements set forth by the NYSDEC.

## 2.        Hillburn Generating Facility

54.        In the fall of 2003, Mirant NY-Gen discovered a leaking underground pipeline at the Hillburn generating facility.  The underground pipeline was used for supplying kerosene fuel to the gas turbines located on site.  After confirmatory testing revealed a potential leak, the line was removed from service and plans were undertaken to excavate and sample portions of the line to determine the extent of the line damage and possible soil contamination.

55.        Upon initial discovery, Mirant NY-Gen reported the leak to the NYSDEC and the Rockland County Health Department.  In the summer of 2004, soil contamination was discovered and subsequent testing of portions of the line revealed a small hole.  Mirant NY-Gen's investigation revealed that the line contained fuel product which pre-dated Mirant NY-Gen's acquisition of the Purchased Assets.

56.        The chemicals Mirant NY-Gen discovered in the contaminated soil in the Hillburn facility include PAHs and/or PCBs.  Upon information and belief, O&R was obligated to remediate this contaminated soil pursuant to the Seller Covenants as set forth in Article 7.16 of the *Gas Turbine and Hydroelectric Generating Station Sales Agreement* and the chemicals discovered in the contaminated soil were present in and/or migrated from the soil O&R was required to remediate after the closing date of the transaction.

57.        On May 19, 2005, the NYSDEC issued a Notice of Hearing and Complaint to Mirant NY-Gen seeking an order requiring Mirant NY-Gen to implement its approved remediation plan, to pay all costs relating to the cleanup (including all costs incurred by the NYSDEC) and to pay a civil penalty in the amount of $100,000.

58.     Currently, investigations continue for the purpose of determining the extent of contamination and remediation steps and procedures that may be required.  In addition, Mirant NY-Gen is working under the direction of the NYSDEC to remove all free product contamination from the groundwater and to undertake remediation actions for additional contamination.

59.     Upon information and belief, the cost of clean-up, remediation, and subsequent monitoring will exceed $3,000,000, subject to the results of ongoing evaluations of the extent of contamination.

### 3.     Secondary Containment Capacity

60.     Mirant Lovett and Mirant Bowline have each discovered that the secondary containment capacity of the oil storage tanks at their respective facilities is inadequate for their design volume.

61.     Prior to Mirant Lovett's acquisition of the Lovett facility, and prior to Mirant Bowline's acquisition of the Bowline facility, the Sellers regularly certified in the process of obtaining permit renewals that the secondary containment volumes of the tanks at those respective facilities were adequate.  Mirant Lovett and Mirant Bowline, relying on the Sellers' certification in their own permit renewal applications, thereafter certified the capacity of the tanks.

62.     Upon information and belief, the inadequate secondary containment capacity of the oil storage tanks at each facility existed prior to the closing date and the inadequacies of the tanks' storage capacity violated applicable laws, regulations, ordinances and/or permits, whether environmental or otherwise.

63.     Upon information and belief, remedying the inadequate secondary containment capacity of the oil storage tanks at their respective facilities will result in liabilities, damages and costs to Mirant Lovett and Mirant Bowline.

### 4.     Swinging Bridge Hydroelectric Station

64.     On or about May 5, 2005, Mirant NY-Gen discovered a sinkhole at its Swinging Bridge Dam, located in Sullivan County, New York.  Thereafter, Mirant NY-Gen filled the sinkhole, inspected the dam's conduit and slopes for damage, drew down the lake level by more than 40 feet, and cleaned the diversion tunnel.  The dam is currently stabilized, but it requires additional repairs before the water level can be restored to normal.

65.     As a result of the sinkhole, the Federal Energy Regulatory Commission ("FERC") ordered Mirant NY-Gen to perform a flood study relating to the Swinging Bridge, Rio and Mongaup reservoirs to determine the maximum capacity of the reservoirs and the downstream consequences of a rain event resulting in rainfall exceeding such maximum capacity.  Mirant NY-Gen has discovered, among other issues, possible problems with the flood study performed by O&R prior to Mirant NY-Gen's acquisition of the hydro facilities.

66.     Mirant NY-Gen will incur liabilities, damages and costs to repair the dam properly.  In addition, ongoing evaluations and remediation action that might be mandated by FERC could result in further liabilities, damages and costs to Mirant NY-Gen.

### H.     The Deficiencies And Problems With the Purchased Assets Are Excluded Liabilities Under the Purchase Agreements

67.     The New York Debtors' liabilities, damages and costs incurred and to be incurred in connection with the deficiencies and problems at the facilities referenced above are Excluded Liabilities under the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, the

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 17

*Lovett Generating Station Sales Agreement*, and the *Bowline Point Generating Station Sales Agreement*. Consequently, the Sellers are obligated to indemnify Mirant NY-Gen, Mirant Lovett, and Mirant Bowline for those liabilities, damages and costs.

68. The New York Debtors have requested indemnification from the Sellers, but the Sellers have failed to abide by their contractual obligations.

69. As described in detail above, the New York Debtors have suffered, and will continue to suffer, damages as a result of the deficiencies and problems at facilities included in the Purchased Assets.

## I. Non-Reimbursed Tax Payments Relating to the Purchased Assets

70. Section 3.4 of the *Bowline Point Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement*, and the *Gas Turbine and Hydroelectric Generating Station Sales Agreement* provides that Seller should be responsible for its prorated portion of taxes accrued by the Purchased Assets through the Closing Date:

> All of the items normally prorated, including those listed below, relating to the business and operation of the Purchased Assets will be prorated as of the Closing Date, with the Sellers liable to the extent such items relate to any time period through the Closing Date, and the Buyer liable to the extent such items relate to periods subsequent to the Closing Date:
>
> (i) personal property, real estate, occupancy and any other Taxes (excluding Income Taxes) … with respect to the ownership, use or business and operation of the Purchased Assets; …
>
> (ii) rent, Taxes (excluding Income Taxes)

71. Section 7.8 of the *Bowline Point Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement*, and the *Gas Turbine and Hydroelectric Generating Station Sales Agreement* provides that Seller should be responsible for its proportionate share of taxes to

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 18

be prorated under section 3.4: "the Sellers shall pay to the Buyer its proportionate share of the amount shown as due on such Tax Returns determined in accordance with the Section 3.4 of this Agreement."

72.     Since the Closing Date, the New York Debtors and Old Mirant paid property taxes on behalf of the Defendants that should have been prorated under the Purchase Agreements and that were accrued to Defendants' properties ("Non-Reimbursed Tax Payments").  The New York Debtors and Old Mirant have requested reimbursement for those tax payments, but Defendants have failed to do so.

## J.     The Claims

### 1.     The O&R Claims

73.     O&R filed Claim No. 5517 seeking $962,036.89.  The Claim was dated November 24, 2003, but was not received until December 3, 2003.  Claim No. 5517 failed to list the debtor from which payment was sought, stating only "see annexed unpaid invoices." Attached to Claim No. 5517 were purportedly forty six (46) invoices.  Those invoices purported to seek payment for numerous services for which both the validity and timing were questionable.

74.     On December 16, 2005, O&R filed Claim No. 8411 seeking $962,036.89 "plus claims for indemnification and related liabilities based on contracts and [guaranties] identified" in a rider attached to the proof of claim.  The attached rider purported to "amend[] its previously filed proof of claim, dated November 24, 2003 to include any and all claims arising under or in connection with the following agreements," listing all six of the Purchase Agreements and Guaranties.

### 2.     The ConEd Claims

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 19

75.    On December 12, 2003, ConEd filed Claim No. 5908 for $88,350.04.  Claim No. 5908 failed to list the debtor from which payment was sought, stating only "see annexed unpaid invoices."  Attached to Claim No. 5908 were purportedly four invoices listing only "Unbundled Transmission Sales" and listing MAEM as the "Customer Name."  Claim No. 5908 was expunged.

76.    On August 16, 2004, ConEd filed Claim No. 8036 for $85,842.80.  As with its prior expunged claim, Claim No. 8036 failed to list the debtor from which payment was sought, stating only "Re: 4 Accounts."  Attached to Claim No. 8036 were purportedly four invoices, three of which listed MAEM as the "Customer Name," and one of which listed Old Mirant as the "Customer Name."

77.    All three of the invoices attached to Claim No. 8036 listing MAEM as the customer name listed only "Unbundled Transmission Sales" in the billing detail.  Two of those invoices were duplicates of invoices filed with prior expunged Claim No. 5908.  One invoice for $5,881.14 listing MAEM was new and dated December 10, 2003.  No explanation for the new invoice was provided, though it purported to seek payment for unspecified service during July 2003 that overlapped with an invoice filed with prior expunged Claim No. 5908.

78.    The invoice attached to Claim No. 8036 that listed Old Mirant as the "Customer Name" totaled $1,880.44.  It listed only "TRANSMISSION PLANNING" and "Review of proposed interconnection at Ladentown substation" under billing details.  The date of that invoice was listed as February 29, 2004.  It was not attached to ConEd's prior expunged Claim No. 5908.

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 20

**K.** **Tolling Agreement**

79. On July 13, 2005, the Mirant Entities and the New York Debtors entered into a Tolling Agreement with the Defendants that tolled any applicable statutes of limitation or other time-related defenses for any claims the Mirant Entities and the New York Debtors might assert against the Defendants. The parties, by written amendments to the Tolling Agreement, extended the Tolling Period for the claims alleged in this Complaint through and including May 1, 2006.

## TIER IV OBJECTIONS TO THE CLAIMS

80. Pursuant to the Court's Procedures Order, which is available on the Internet at www.alixpartners.com/cms: (1) this Objection constitutes a Tier IV Objection; and (2) the Mirant Entities and the New York Debtors reserve the right to object to the Claims, and any other claim filed by the Defendants against any of the Mirant Entities and the New York Debtors, on grounds other than those set forth herein in another proceeding, to the extent such claims survive this proceeding, including, without limitation, the right to assert any future claims, counterclaims, rights of offset or recoupment, preference actions, fraudulent transfer actions, or any other bankruptcy or non-bankruptcy claims against the Defendants. The Defendants will be provided with notice and an opportunity to oppose or respond to such additional objections.

**A.** **Objections To The O&R Claims**

      **1.** **Bankruptcy Code Section 502(d) Bars O&R's Claims**

81. The Mirant Entities and the New York Debtors object to the allowance of the O&R Claim under section 502(d) of the Bankruptcy Code.

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 21

82.     Bankruptcy Code section 502(d) provides that a court shall disallow any

otherwise allowable claim of an entity that is the recipient of a transfer avoidable under Chapter

5 of the Bankruptcy Code, unless the recipient surrenders the transfer:

> Notwithstanding subsections (a) and (b) of this section, the court
> shall disallow any claim of any entity from which property is
> recoverable under section 542, 543, 550, of 553 of this title or that
> is a transferee of a transfer avoidable under section 522(f), 522(h),
> 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or
> transferee has paid the amount, or turned over any such property,
> for which such entity or transferee is liable under section 522(i),
> 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

83.     The Old Mirant Transfers constitute a fraudulent transfer to O&R that is

avoidable under applicable state law pursuant to section 544 of the Bankruptcy Code, and the

MAEM Transfer constitutes a fraudulent transfer to O&R that is avoidable under applicable state

law pursuant to section 544 of the Bankruptcy Code.  The avoidability of the Transfers is further

discussed below.

84.     O&R has not surrendered the Transfers made to it.  Consequently, the O&R

Claim should be disallowed under section 502(d) of the Bankruptcy Code.

**2.      Bankruptcy Code Section 502(e)(1)(B) Disallows O&R's Amended
         Claim**

85.     O&R's amendment seeking "claims for indemnification and related liabilities

based on contracts and guarantees" should be disallowed pursuant to Bankruptcy Code section

502(e)(1)(B).

86.     On December 16, 2005, O&R filed Claim No. 8411, amending its prior claim,

seeking $962,036.89 "plus claims for indemnification and related liabilities based on contracts

*Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.*
Page 22

and guarantees identified" in a rider attached to the claim form. O&R's attached rider listed all six of the Purchase Agreements and Guaranties.

87. Section 502(e)(1)(B) of the Bankruptcy Code prevents a distribution from the estate from being made on the basis of a contingent claim for indemnity. See *Aetna Cas. & Sur. Co. v. Georgia Tubing Corp.*, 1995 U.S. Dist. Lexis 10120,*6-9 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 56 (2d Cir. 1996). "A contingent claim becomes fixed and allowable to the extent that the co-debtor has paid the underlying claim." *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 982, 990 (Bankr. S.D.N.Y. 1992).

88. O&R has not stated that it has paid any underlying claim to which its purported "indemnification" might apply. Section 502(e) provides that courts should disallow such contingent claims:

> the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that – (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

*See* 11 U.S.C. § 502(e)(1)(B). The legislative history to section 502(e)(1)(B) explains that such disallowances prevent unnecessary competition between claimants and guarantors:

> [Section 502(e)(1)(B)] requires disallowance of the claim for reimbursement or contribution of a co-debtor, surety or guarantor of an obligation of the debtor, unless the claim of the creditor on such obligation has been paid in full. The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; Sen. Rep. No. 989, 95th Cong. 2d Sess. 65 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5851.

### 3. O&R's Amended Claim Fails to Adequately Describe Its Basis

89. O&R's amended Claim No. 8411 seeking indemnification must be disallowed because it fails to provide sufficient facts to describe its claim.

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 23

90.     Allegations in a proof of claim must "set forth all the necessary facts to establish a claim" and must not be "self-contradictory." *See* 3 *Collier on Bankruptcy*, Par. 502.02, pp. 502-22; *In re Circle J Dairy, Inc.*, 112 B.R. 297, 300 (W.D. Ark. 1989). A party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets pursuant to Fed. R. Bankr. P. 3001(f). *See In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). While a failure to set forth all necessary facts to establish a claim does not necessarily require the court to disallow the claim, the claim is not entitled to prima facie validity. *See In re Circle*, 112 B.R. at 300 ("[t]he prima facie validity of the claim does not attach unless the claim is in compliance with the rules, including 3001, and set[s] forth the facts necessary to support the claim") (internal quotations omitted).

91.     O&R did nothing more than state it has "claims for indemnification and related liabilities based on contracts and guarantees identified" and attach a rider listing all six of the Purchase Agreements and Guaranties.

92.     In doing so, O&R fails to even provide a basic description of the liabilities for which it may purportedly be indemnified, much less adequately describe its claim. Consequently, Mirant can not begin to craft a response without knowing even the basic fundamentals of that claim.

93.     Nor can the Court properly judge the merits of such a claim. For example, when considering whether Bankruptcy Code section 502(e)(1)(B) applies to contingent claims, courts have adopted three criteria: (a) the claim must be one for reimbursement or contribution; (2) the entity asserting the claim for reimbursement or contribution must be "liable with the debtor" on the claim; and (c) the claim must be contingent at the time of its allowance or disallowance. *See In re Pinnacle Brands, Inc.*, 259 B.R. 46, 55 (Bankr. D. Del. 2001); *In re Provincetown-Boston*

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 24

*Airlines, Inc.*, 72 B.R. 307, 309 (Bankr. M.D. Fla. 1987). The Court cannot come to a conclusion here where the underlying claim has not even been identified.

94. As a result of O&R's failure to provide sufficient documentation to support its indemnification claim, it "bear[s] the burden of persuasion to establish" the validity of that claim. *In re Hydro-River*, No. 01-10209, 2004 Bankr. Lexis 262, at *9 (E.D. Tex. Jan. 22, 2004); *see also In re Henry*, 311 B.R. 813, 820 (Bankr. W.D. Wash. 2004) (the court disallowed claims that failed to establish the "legality of the charges").

95. Because O&R has not filed that claim in compliance with Fed. R. Bankr. 3001(f), it retains the burden of persuasion to establish the amount of the claim. *See* Fed. R. Bankr. P. 3001(f); *see also In re Consolidated Pioneer Mortgage*, 178 B.R. 227 (B.A.P. 9th Cir. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996).[6] Without sufficient facts to support O&R's indemnification claim, the Court should disallow it.

### 4. O&R Asserts Claims That Are Not Allowable

96. The O&R Claim asserts claims that are not allowable under section 502 of the Bankruptcy Code and other authority.

97. Claim No. 5517 asserts claims under invoices purporting to seek payment from the New York Debtors and Old Mirant for numerous services the validity and timing of which are disputed.

98. The Mirant Entities and the New York Debtors contest both the validity and the amounts of the O&R Claim.

---

[6] "A claim filed pursuant to § 501 enjoys prima facie validity which may be overcome by the trustee's presentation of evidence. … To sustain an objection, the trustee must overcome the presumption of validity which attaches to all properly filed claims." *In re MissionaryBaptist Foundation, Inc.*, 712 F.2d 206, 212 (5th Cir. 1983). Here, the Claims have no prima facie validity. Therefore, the burden does not shift to the Mirant Entities and the New York Debtors.

**B.**     **Objections to the ConEd Claim**

        **1.**     **Bankruptcy Code Section 502(d) Bars ConEd's Claim**

99.     The Mirant Entities and the New York Debtors object to the allowance of the

ConEd Claim under section 502(d) of the Bankruptcy Code.

100.     Bankruptcy Code section 502(d) provides that a court shall disallow any

otherwise allowable claim of an entity that is the recipient of a transfer avoidable under Chapter

5 of the Bankruptcy Code, unless the recipient surrenders the transfer:

> Notwithstanding subsections (a) and (b) of this section, the court
> shall disallow any claim of any entity from which property is
> recoverable under section 542, 543, 550, of 553 of this title or that
> is a transferee of a transfer avoidable under section 522(f), 522(h),
> 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or
> transferee has paid the amount, or turned over any such property,
> for which such entity or transferee is liable under section 522(i),
> 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

101.     The Old Mirant Transfers constitute a fraudulent transfer to ConEd that is

avoidable under applicable state law pursuant to section 544 of the Bankruptcy Code.  The

avoidability of the Old Mirant Transfers is further discussed below.

102.     ConEd has not surrendered the Old Mirant Transfers made to it.  Consequently,

the ConEd Claim should be disallowed under section 502(d) of the Bankruptcy Code.

        **2.**     **ConEd's Claim Against Old Mirant Should Be Barred For Late Filing**

103.     ConEd's claim related to the invoice it attached to Claim No. 8036 for $1,880.44

from Old Mirant should be disallowed for being filed after the Claims Bar Date.

104.     As stated above, the Court established the Claims Bar Date as December 16,

2003.  Section 502(b)(9) of the Bankruptcy Code provides:

*Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company*
*of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,*
*Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &*
*Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.*
Page 26

(b) . . . the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount except to the extent that—

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure . . . .

11 U.S.C. § 502(b)(9).

105.    ConEd originally filed Claim No. 5908 attaching invoices for "Unbundled Transmission Sales" listing MAEM before the Claims Bar Date.

106.    ConEd later filed Claim No. 8036 in August of 2004, after the December 16, 2003 Claims Bar Date.  Many of the claims therein sought payments for the "Unbundled Transmission Sales" from MAEM that were attached to Claim No. 5908.

107.    However, ConEd also attached an invoice from a different party seeking payment for different services.  Specifically, Invoice No. 070/01001/46054 seeks $1,880.44 from Old Mirant for "TRANSMISSION PLANNING" and "Review of proposed interconnection at Ladentown substation."

108.    ConEd's new claims against a different party, and for different services, should be disallowed for being filed more than seven months after the Claims Bar Date.

## FIRST COUNTERCLAIM FOR RELIEF

**(By Mirant Against All Defendants for Avoidance of Fraudulent Obligations Under 11 U.S.C. § 544 and Applicable Law for the Guaranties)**

109.    Mirant incorporates by reference paragraphs 1 through 108 as though fully alleged herein.

110.    Under 11 U.S.C. § 544(b)(1), any debtor may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502 or that is

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411, Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange & Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 27

not allowable only under 11 U.S.C. § 502(e).  The phrase "under applicable law" has been interpreted to mean the state's fraudulent transfer law that would govern the potentially fraudulent transaction.

111.    Applicable law provides that a transfer made or an obligation incurred by a debtor is avoidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:  (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

112.    In the alternative, applicable state law provides that (A) every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or a transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction and (B) every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

113.    Applicable law provides that a transfer made or an obligation incurred by a debtor is avoidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 28

reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or the obligation.

114.     In the alternative, applicable law provides that every conveyance made or obligation incurred by a debtor who is or will be thereby rendered insolvent is avoidable as to creditors if the conveyance is made or the obligation is incurred without fair consideration.

115.     Applicable law provides that, if a conveyance or an obligation is fraudulent as to a creditor, the creditor may avoid the transfer or an obligation.

116.     As of the Petition Date, there existed creditors of Old Mirant holding unsecured claims allowable under 11 U.S.C. § 502, or that were not allowable only under 11 U.S.C. § 502(e), whose claims arose before the obligations of Old Mirant under the Guaranties (the "Guaranty Obligations") were incurred, and there existed creditors of Old Mirant holding unsecured claims allowable under 11 U.S.C. § 502, or that were not allowable only under 11 U.S.C. § 502(e), whose claims arose after the Guaranty Obligations were incurred.

117.     The assets to be acquired by the New York Debtors under the Purchase Agreements were, individually and collectively, worth substantially less than the purchase prices under the Purchase Agreements, and the acquisition of those assets would not enhance the value of Old Mirant by amounts commensurate with the payments to be made by the New York Debtors under the Purchase Agreements.  Accordingly, Old Mirant did not receive reasonably equivalent value in exchange for the Guaranty Obligations, and the Guaranty Obligations were incurred without fair consideration.

118.     Old Mirant was insolvent on the date the Guaranty Obligations were incurred or became insolvent as a result of the Guaranty Obligations.  Alternatively, on the date the Guaranty Obligations were incurred, Old Mirant was engaged or was about to engage in a

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 29

business or a transaction for which the remaining assets of Old Mirant were unreasonably small in relation to the business or the transaction and for which the property remaining in Old Mirant's possession or control was an unreasonably small capital. Alternatively, on the date the Guaranty Obligations were incurred, Old Mirant intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

119. The Guaranty Obligations are avoidable fraudulent obligations, within the meaning of applicable law, under 11 U.S.C. § 544(b)(1).

## SECOND COUNTERCLAIM FOR RELIEF

**(By Mirant Against All Defendants for Avoidance of Fraudulent Transfers Under 11 U.S.C. § 544 and Applicable Law for the Old Mirant Transfers)**

120. Mirant incorporates by reference paragraphs 1 through 119, as though fully alleged herein.

121. As of the Petition Date, there existed creditors of Old Mirant holding unsecured claims allowable under 11 U.S.C. § 502, or that were not allowable only under 11 U.S.C. § 502(e), whose claims arose before the date of the Old Mirant Transfers, and there existed creditors of Old Mirant holding unsecured claims allowable under 11 U.S.C. § 502, or that were not allowable only under 11 U.S.C. § 502(e), whose claims arose after the date of the Old Mirant Transfers.

122. The assets acquired by the New York Debtors under the Purchase Agreements were, individually and collectively, worth substantially less than the purchase prices under the Purchase Agreements, and the acquisition of those assets did not enhance the value of Old Mirant by amounts commensurate with the Old Mirant Transfers. Accordingly, Old Mirant did not receive reasonably equivalent value in exchange for the Old Mirant Transfers, and the Old

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411, Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange & Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 30

Mirant Transfers were made without fair consideration.

123.     The Guaranty Obligations were and are avoidable fraudulent obligations for the reasons set forth in Count One above.  Therefore, to the extent the Old Mirant Transfers were made pursuant to the Guaranties, the Old Mirant Transfers were not made on account of valid antecedent debt.

124.     Old Mirant was insolvent on the date the Old Mirant Transfers were made or became insolvent as a result of the Old Mirant Transfers.  Alternatively, on the date the Old Mirant Transfers were made, Old Mirant was engaged or was about to engage in a business or a transaction for which the remaining assets of Old Mirant were unreasonably small in relation to the business or the transaction and for which the property remaining in Old Mirant's possession or control was an unreasonably small capital.  Alternatively, on the date the Old Mirant Transfers were made, Old Mirant intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

125.     The Old Mirant Transfers are avoidable fraudulent transfers, within the meaning of applicable law, under 11 U.S.C. § 544(b)(1).

### THIRD COUNTERCLAIM FOR RELIEF

**(By Mirant and MET Against O&R for Avoidance of Fraudulent Transfers Under 11 U.S.C. § 544 and Applicable Law for the MAEM Transfers)**

126.     Mirant and MET incorporate by reference paragraphs 1 through 125, as though fully alleged herein.

127.     As of the Petition Date, there existed creditors of MAEM holding unsecured claims allowable under 11 U.S.C. § 502, or that were not allowable only under 11 U.S.C. § 502(e), whose claims arose before the date of the MAEM Transfer, and there existed creditors

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411, Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange & Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 31

of MAEM holding unsecured claims allowable under 11 U.S.C. § 502, or that were not allowable only under 11 U.S.C. § 502(e), whose claims arose after the date of the MAEM Transfer.

128.     On the date of the MAEM Transfer, O&R was solvent and able to pay its debts as they became due, and claims against O&R were worth their face value.

129.     On the date of the MAEM Transfer, each of the New York Debtors was insolvent and, upon information and belief, unable to pay their debts as they became due without financial support from Old Mirant, and claims against them were worth substantially less than their face value.  The consideration MAEM received for the MAEM Transfer was worth substantially less than value of the property transferred.  Accordingly, MAEM did not receive reasonably equivalent value in exchange for the MAEM Transfer, and the MAEM Transfer was made without fair consideration.

130.     MAEM was insolvent on the date the MAEM Transfer was made or became insolvent as a result of the MAEM Transfer.  Alternatively, on the date the MAEM Transfer was made, MAEM was engaged or was about to engage in a business or a transaction for which the remaining assets of MAEM were unreasonably small in relation to the business or the transaction and for which the property remaining in MAEM's possession or control was an unreasonably small capital.  Alternatively, on the date the MAEM Transfer was made, MAEM intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

131.     The MAEM Transfer is an avoidable fraudulent transfer, within the meaning of applicable law, under 11 U.S.C. § 544(b)(1).

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 32

132. In accordance with section 8.12 of the Plan, all Causes of Action (as defined in the Plan) of MAEM were transferred to Mirant on the Effective Date. Mirant seeks recovery on behalf of itself and on the basis of any causes of action transferred from MAEM to Mirant.

133. Pursuant to section 8.3 of the Plan, all assets of MAEM and other "Trading Debtors", excluding certain specified exceptions, were transferred to MET. To the extent the recovery herein is considered an "asset" rather than a "cause of action", MET seeks recovery on behalf of itself and on the basis of any assets transferred from MAEM to MET.

## FOURTH COUNTERCLAIM FOR RELIEF

**(By Mirant and MET Against All Defendants for Recovery of the Property or Its Value for the Estate Under 11 U.S.C. § 550 for the Transfers)**

134. Mirant and MET incorporate by reference paragraphs 1 through 133, as though fully alleged herein.

135. Under 11 U.S.C. § 550(a), "[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from:

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee."

136. Each Defendant is the initial transferee of a Transfer, the entity for whose benefit a Transfer was made, or an immediate or mediate transferee of the initial transferee.

137. To the extent the Transfers are avoided, Mirant and/or MET may recover the property transferred, or the value of the transferred property, from the Defendants pursuant to 11 U.S.C. § 550(a).

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411, Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange & Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 33

138.     Mirant and/or MET seek to recover damages from the Defendants in an amount equal to the dollar value of the Transfers as of the dates of the Transfers, together with interest on that amount from the dates of the Transfers, attorneys' fees, and costs of suit and collection allowable by law.

## FIFTH COUNTERCLAIM FOR RELIEF

**(By the New York Debtors against O&R and ConEd for Breach of Contract)**

139.     The New York Debtors incorporate by reference paragraphs 1 through 108**,** as though fully alleged herein.

140.     The New York Debtors complied fully with all of their obligations under the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement*, and the *Bowline Point Generating Station Sales Agreement*, respectively.

141.     The Seller Covenants required Sellers to disclose the deficiencies and problems in the Purchased Assets alleged herein, which Sellers failed to disclose.  Sellers breached the Seller Covenants by failing to disclose these deficiencies and problems in the Deficient Facilities.

142.     Pursuant to the terms of the Purchase Agreements, the Sellers are responsible for any liabilities, damages and costs arising out of any breach of the Seller Covenants, including, without limitation, the foregoing, and are obligated to indemnify, defend and hold harmless the New York Debtors for the same.

143.     The Sellers have failed and refused to abide by their obligations, including, without limitation, their obligations to disclose the deficiencies and problems, remediate soil contamination, comply with their other covenants and agreements, and defend and indemnify the New York Debtors under the Purchase Agreements, despite their demand that Sellers honor their obligations thereunder.

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 34

144.     As a direct and proximate result of Sellers' breaches, the New York Debtors have sustained and will continue to sustain damages in an amount to be proven at trial.

## SIXTH COUNTERCLAIM FOR RELIEF

**(By the New York Debtors Against O&R and ConEd for a Declaratory Judgment under 28 U.S.C. § 2201)**

145.     The New York Debtors incorporate by reference paragraphs 1 through 144, as though fully alleged herein.

146.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, for purposes of determining questions of actual controversy between the parties.

147.     As alleged above, the liabilities, damages and costs associated with the deficiencies and problems at the facilities are Excluded Liabilities under the Purchase Agreements.

148.     Pursuant to the terms of the Purchase Agreements, the Sellers are responsible for any liabilities, damages and costs arising out of the Excluded Liabilities and are obligated to indemnify the New York Debtors for the same.

149.     As such, Sellers have an obligation under the Purchase Agreements to indemnify the New York Debtors for the liabilities, damages and costs incurred by them and to be incurred arising out of the Excluded Liabilities.  The Sellers also have an obligation to defend the New York Debtors against the claims brought by the NYSDEC.

150.     Sellers have failed and refused to abide by their obligations under the Purchase Agreements despite the New York Debtors' demand that Sellers honor their obligations thereunder.

151. As a result of Sellers' refusal to abide by their contractual obligations, an actual controversy has arisen and now exists between the parties.

152. The New York Debtors seek a declaratory judgment pursuant to 28 U.S.C.A. § 2201 that: (a) the deficiencies and problems at the facilities included in the acquisition of the Purchased Assets are Excluded Liabilities under certain of the Purchase Agreements; (b) Sellers are obligated to indemnify the New York Debtors for the liabilities, damages and costs arising out of the Excluded Liabilities; and (c) Sellers are required to defend the New York Debtors against the same.

## SEVENTH COUNTERCLAIM FOR RELIEF

**(By the New York Debtors and Mirant against O&R and ConEd for Breach of Contract)**

153. The New York Debtors and Mirant incorporate by reference paragraphs 1 through 152, as though fully alleged herein.

154. The New York Debtors and Mirant complied fully with all of their obligations under the *Gas Turbine and Hydroelectric Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement*, and the *Bowline Point Generating Station Sales Agreement*, respectively.

155. Section 3.4 of the *Bowline Point Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement*, and the *Gas Turbine and Hydroelectric Generating Station Sales Agreement* provides that Sellers should be responsible for their prorated portion of taxes accrued by the Purchased Assets through the Closing Date.

156. Section 7.8 of the *Bowline Point Generating Station Sales Agreement*, the *Lovett Generating Station Sales Agreement*, and the *Gas Turbine and Hydroelectric Generating Station*

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 36

*Sales Agreement* provides that Sellers should be responsible for their proportionate share of taxes to be prorated under section 3.4.

157.     The Sellers have failed and refused to abide by their obligations, including, without limitation, their obligations to reimburse the New York Debtors and Mirant for the Non-Reimbursed Tax Payments.

158.     As a direct and proximate result of Sellers' breaches, the New York Debtors and Mirant have sustained and will continue to sustain damages in an amount to be proven at trial.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

(a)     That the Court enter a judgment disallowing the O&R Claim;

(b)     That the Court enter a judgment disallowing the ConEd Claim;

(c)     As to the First Counterclaim, that the Court enter judgment in favor of Mirant and against the Defendants: (i) avoiding the Guaranty Obligations pursuant to 11 U.S.C. § 544; and (ii) granting such relief as the Court deems just and equitable.

(d)     As to the Second Counterclaim, Third Counterclaim and Fourth Counterclaim, that the Court enter judgment in favor of Mirant and against the Defendants: (i) avoiding the Transfers pursuant to 11 U.S.C. § 544; (ii) ordering that Mirant and MET may recover the value of the property transferred, with interest, attorneys' fees, and costs of suit and collection allowable by law; (iii) disallowing, in accordance with 11 U.S.C. § 502(d), any claim held by Defendants until Defendants satisfy the judgment; and (iv) granting such relief as the Court deems just and equitable.

(e)      As to the Fifth Counterclaim, that the Court enter judgment in favor of the New York Debtors and against O&R and ConEd for damages according to proof, interest, attorneys' fees, costs, and such other relief the Court deems just and appropriate.

(f)      As to the Sixth Counterclaim, that the Court enter judgment in favor of the New York Debtors and against O&R and ConEd declaring: (i) the deficiencies and problems at the facilities included in the Purchased Assets are Excluded Liabilities under certain of the Purchase Agreements; (ii) O&R and ConEd are obligated to indemnify the New York Debtors for the liabilities, damages and costs arising out of the Excluded Liabilities; and (iii) O&R and ConEd are required to defend the New York Debtors against the same.

(g)      As to the Seventh Counterclaim, that the Court enter judgment in favor of the New York Debtors and Mirant and against O&R and ConEd for damages according to proof, interest, attorney fees, costs, and such other relief the Court deems just and appropriate.

Dated: May 1, 2006
Fort Worth, Texas

By     /s/ Craig H. Averch

        Thomas E Lauria
        State Bar No. 11998025
        Craig H. Averch
        State Bar No. 01451020
        WHITE & CASE LLP
        Wachovia Financial Center
        200 South Biscayne Blvd.
        Miami, Florida 33131
        (305) 371-2700

        ATTORNEYS FOR MIRANT, MET AND THE
        MIRANT ENTITIES

        - and -

By     /s/ Jeff P. Prostok

        Jeff P. Prostok
        State Bar No. 16352500
        Blake L. Berryman
        State Bar No. 02252980
        FORSHEY & PROSTOK, L.L.P.
        777 Main Street, Suite 1290
        Fort Worth, Texas 76102
        (817) 877-8855

        ATTORNEYS FOR THE NEW YORK DEBTORS

L:\JPROSTOK\Mirant\NEW YORK DEBTORS - #1828\Orange & Rockland Utilities\Complaint 5.1.06.doc

Tier IV Objections to Proof of Claim No. 8036 Filed by Consolidated Edison Company
of New York, Inc. and Proof of Claim No. 5517, Amended by Claim No. 8411,
Filed by Orange & Rockland Utilities, Inc.; and Counterclaims Against Orange &
Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.
Page 39