Martin A. Sosland
Texas State Bar No. 18855645
Vance L. Beagles
Texas State Bar No. 00787052
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

ATTORNEYS FOR CONSOLIDATED
EDISON COMPANY OF NEW YORK, INC. and
ORANGE AND ROCKLAND UTILITIES, INC.

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re** § | | |
| § | | |
| **MIRANT CORPORATION, et al.,** § | | |
| § | | |
| **Debtors.** § | **Chapter 11** | |
| § | | |
| § | **Case No. 03-46590 (DML)** | |
| **MIRANT CORPORATION, MIRANT** § | **Jointly Administered** | |
| **ENERGY TRADING, LLC, MIRANT** § | | |
| **NY-GEN, LLC, MIRANT LOVETT, LLC,** § | | |
| **and MIRANT BOWLINE, LLC,** § | **Adversary Proc. No. 06-04141** | |
| § | | |
| **Plaintiffs,** § | | |
| **v.** § | | |
| § | **Status Conference Date and Time:** | |
| **CONSOLIDATED EDISON COMPANY** § | **To Be Determined** | |
| **OF NEW YORK, INC. and ORANGE** § | | |
| **AND ROCKLAND UTILITIES, INC.,** § | | |
| § | | |
| **Defendants.** § | | |

**MOTION OF CONSOLIDATED EDISON COMPANY OF**
**NEW YORK, INC. AND ORANGE AND ROCKLAND UTILITIES, INC.**
**TO WITHDRAW THE REFERENCE WITH RESPECT TO THE**
**FIFTH, SIXTH, AND SEVENTH COUNTERCLAIMS IN**
**ADVERSARY PROCEEDING NO. 06-04141 AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

JURISDICTION AND VENUE.........................................................................2

FACTUAL BACKGROUND...............................................................................3

    THE PURCHASE AGREEMENTS AND GUARANTIES................................................3

    THE DEBTORS' BANKRUPTCY PROCEEDINGS ..................................................4

    THE CLAIMS FILED BY CON EDISON AND O&R...............................................5

    THE DEBTORS' OBJECTION TO THE CLAIMS AND THEIR ASSERTION
    OF "COUNTERCLAIMS".....................................................................................6

    UPON WITHDRAWAL OF THE REFERENCE OF THE BREACH OF CONTRACT
    COUNTERCLAIMS, THE MOVANTS WILL SEEK A TRANSFER OF THE PROCEEDINGS
    THEREON TO THE NEW YORK DISTRICT COURT ................................................8

ARGUMENT......................................................................................................10

    WITHDRAWAL OF THE REFERENCE IS WARRANTED .........................................10

    THE BREACH OF CONTRACT COUNTERCLAIMS ARE NON-CORE PROCEEDINGS.................11

    THE MOVANTS ARE ENTITLED TO, AND WILL SEEK, A TRIAL BY JURY ...............15

    THE MOVANTS ARE NOT FORUM SHOPPING .................................................17

    THE REMAINING *HOLLAND* FACTORS FAVOR WITHDRAWAL OF THE REFERENCE ..............18

CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*In re American Energy, Inc.*,
   50 B.R. 175 (Bankr. D.N.D. 1985)...........................................................................12

*Amos v. Ford Motor Credit Corp.*,
   No. 4:03CV125-D-B, 2003 WL 23199863 (N.D.Miss. Dec. 29, 2003)....................11

*Apache Products Co. v. Employers Ins. of Wausau*,
   154 F.R.D. 650 (S.D. Miss. 1994)............................................................................11

*In re Behring & Behring*,
   445 F.2d 1096 (5th Cir. 1971)..................................................................................17

*Bowles v. Bennett*,
   629 F.2d 1092 (5th Cir. 1980)..................................................................................16

*In re Bryant,*
   626 F.2d 492, 494 (5th Cir. 1980)............................................................................16

*In re Chateaugay Corp*,
   No. 00-CV-9429, 2002 WL 484950 (S.D.N.Y. Mar. 29, 2002) ...............................10

*In re Clay,*
   35 F.3d 190, 195, 197-98 (5th Cir. 1994) ................................................................17

*Crocker v. Borden, Inc.*,
   852 F. Supp. 1322 (E.D.La. 1994)............................................................................11

*In re Crown Vantage, Inc.,*
   No. C 02-03836, 2002 WL 32872440 (N.D.Cal. Dec. 16, 2002)..............................16

*In re Daewoo Motor America, Inc.*,
   302 B.R. 308 (C.D.Cal. 2003)..................................................................................10

*Fuentes v. Shevin*,
   407 U.S. 67 (1972)...................................................................................................15

*In re Gardner*,
   913 F.2d 1515 (10th Cir. 1990) ...............................................................................12

*Germain v. Conn. Nat'l Bank*,
   988 F.2d 1323 (2d Cir. 1993)..............................................................................16, 17

*Griffith v. Realty Executives, Inc.*,
   6 B.R. 753 (Bankr. D.N.M. 1980) ..........................................................................11

*Halper v. Halper*,
   164 F. 3d 830 (3d Cir. 1999)........................................................................... 11, 12

*Holland America Ins. Co. v. Succession of Roy*,
   777 F.2d 992 (5th Cir. 1985)................................................................................ 10

*Jennings v. McCormick*,
   154 F.3d 542 (5th Cir. 1998)................................................................................ 16

*Mirant v. Southern*,
   337 B.R. 107 (N.D.Tex. 2006) ...................................................................*passim*

*In re N. Parent, Inc.*,
   221 B.R. 609 (Bankr. D.Mass. 1998) ..................................................................11

*In re Nanodata Computer Corp.*,
   74 B.R. 766 (W.D.N.Y. 1987)......................................................................... 12, 13

*Northern Pipeline Constr. Co. v. Marathon Pipeline*,
   458 U.S. 50 (1982)................................................................................................ 12

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993)................................................................................... 14

*In re Parmalat Finanziaria S.p.A.*,
   320 B.R. 46 (S.D.N.Y. 2005) ............................................................................... 10

*Ralls v. Docktor Pet Ctrs., Inc.*,
   177 B.R. 420 (D.Mass. 1995)............................................................................... 11

*In re Republic Reader's Serv., Inc.*,
   81 B.R. 422 (Bankr. S.D.Tex. 1987) ...................................................................11

*In re Rickel & Assoc., Inc.*,
   320 B.R. 513 (Bankr. S.D.N.Y. 2005).............................................................. 15, 16

*In re Roddam*,
   193 B.R. 971 (Bankr. N.D.Ala. 1996) .............................................................. 12, 13

*Ross v. Bernhard,*
   396 U.S. 531, 538 (1970) ..................................................................................... 16

*Sanders Confectionery Prods. v. Heller Fin.*,
   973 F.2d 474 (6th Cir. 1992) ............................................................... 13

*Security Farms v. International Bhd. of Teamster Chauffers, Warehouseman &*
   *Helpers*, 124 F.3d 999 (9th Cir. 1997) ............................................... 12

*In re Southmark Corp.*,
   163 F.3d 925 (5th Cir. 1999) ............................................................... 14

*Specialty Mills, Inc. v. Citizens State Bank*,
   51 F.3d 770 (8th Cir. 1995) ................................................................ 12

*In re Sturm*,
   66 B.R. 325 (Bankr. N.D.Ill. 1986) ................................................ 12, 13

*In re Systems Eng. & Energy Mgmt., Assoc., Inc.*,
   252 B.R. 635 (Bankr. E.D.Va. 2000) ................................................... 11

*In re U.S. Brass Corp.*,
   301 F. 3d 296 (5th Cir. 2002) .............................................................. 12

*In re United States Brass Corp.*,
   110 F.3d 1261 (7th Cir. 1997) ............................................................ 12

*United States v. Kaplan*,
   146 B.R. 500 (D.Mass. 1992) .............................................................. 10

*In re White*,
   172 B.R. 841 (S.D.Miss. 1994) ........................................................... 15

*Wood v. Wood*,
   825 F.2d 90 (5th Cir. 1987) ............................................................ 12, 13

*In re Yagow*,
   53 B.R. 737 (Bankr. D.N.D. 1985) ............................................. 12, 13, 14

## CONSTITUTIONAL AUTHORITY AND STATUTES

U.S. Const. amend. VII ........................................................................ 15

28 U.S.C. §§ 1404 .................................................................................. 9

28 U.S.C. § 1412 ..................................................................................... 9

28 U.S.C. §§ 157 ............................................................................ *passim*

**MOTION OF CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC. AND ORANGE AND ROCKLAND UTILITIES, INC.
TO WITHDRAW THE REFERENCE WITH RESPECT TO THE
FIFTH, SIXTH, AND SEVENTH COUNTERCLAIMS IN
ADVERSARY PROCEEDING NO. 06-04141 AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Consolidated Edison Company of New York, Inc. ("Con Edison") and Orange

and Rockland Utilities, Inc. ("O&R," and together with Con Edison, the "Movants") hereby

move to withdraw the reference to the United States Bankruptcy Court for the Northern District

of Texas (the "Bankruptcy Court") with respect to the non-core Fifth, Sixth, and Seventh

Counterclaims in Adversary Proceeding No. 06-04141 pursuant to 28 U.S.C. § 157(d), Rule

5011 of the Federal Rules of Bankruptcy Procedure and Rule 5011.1 of the Local Rules of

Bankruptcy Procedure.   In support hereof, the Movants respectfully state as follows:

<u>Preliminary Statement</u>

1.      Stripped to their bare bones, the seven causes of action asserted by the

Debtors in this adversary proceeding equate to two sets of equally flawed claims:   (i) time-

barred claims to recover for alleged fraudulent conveyances that occurred more than four years

prior to the filing of the Debtors' bankruptcy petitions, and (ii) factually distinct state law causes

of action which seek to hold the Movants responsible for certain of the Debtors' environmental

and tax problems.

2.      Although couched in the guise of "objections" and "counterclaims" to

Movants' proofs of claim, the "counterclaims" bear no relation to the proofs of claim asserted by

the Movants.   Rather, the proofs of claim asserted by the Movants are based upon open utility

and ancillary services accounts between the Debtors and the Movants for products and services

provided in the year preceding the Debtors' chapter 11 filing. The Debtors' counterclaims relate to transactions occurring more than seven years ago.

3.    The Debtors may try to argue that by filing this Motion the Movants are trying to side-step the Bankruptcy Court. However, the facts belie this assertion. The Movants are prepared to proceed in the Bankruptcy Court with respect to the Debtors' asserted fraudulent conveyance counterclaims.[1]   On the other hand, with respect to non-core state law contract claims, the Movants intend to preserve and assert their right to a jury trial and do not consent to the Bankruptcy Court conducting a jury trial or entering a final order or judgment. Accordingly, as more fully discussed below and in accordance with Fifth Circuit law, this Court should withdraw the reference as to the Fifth, Sixth and Seventh Counterclaims for Relief.

## Jurisdiction and Venue

4.    This Court has jurisdiction to consider this Motion as it pertains to the Fifth, Sixth, and Seventh Counterclaims (the "Breach of Contract Counterclaims") in Adversary Proceeding No. 06-04141 (this "Adversary") pursuant to 28 U.S.C. §§ 157 and 1334. While this district is one in which venue may be proper pursuant to 28 U.S.C. §§ 1408 and 1409, by separate motion, the Movants intend to seek to transfer proceedings with respect to the Breach of Contract Counterclaims to the United States District Court for the Southern District of New York (the "New York District Court") in the interest of justice and for the convenience of the parties and witnesses.

---

[1] The Movants have filed with the Bankruptcy Court a motion to dismiss the fraudulent conveyance counterclaims as time-barred. *See infra* ¶ 9.

# **Factual Background**

<u>The Purchase Agreements and Guaranties</u>

5.        On or about November 24, 1998, Mirant NY-Gen, LLC ("Mirant NY-Gen"), Mirant Lovett, LLC ("Mirant Lovett") and Mirant Bowline, LLC ("Mirant Bowline," and together with Mirant NY-Gen and Mirant Lovett, the "New York Debtors"), as buyers, and the Movants, as sellers, executed four purchase agreements (collectively, the "Purchase Agreements") for the purchase and sale of the Movants' interests in certain power generating assets located in the State of New York.

(a)     <u>Bowline Point Generating Station Sales Agreement</u>.  Mirant Bowline agreed to purchase the real and personal property constituting or used principally for power generation purposes at the Bowline Point Generating Station located in Rockland County, New York (the "Bowline Generating Facility").  The purchase price for the Bowline Generating Facility was approximately $199,850,000.00.

(b)     <u>Bowline Adjacent Property Agreement</u>.  Mirant Bowline agreed to purchase a parcel of land consisting of approximately 98 acres adjacent to the Bowline Generating Facility (the "Bowline Property") for a purchase price of approximately $12,500,000.00.

(c)     <u>Lovett Generating Station Sales Agreement</u>.  Mirant Lovett agreed to purchase real and personal property, constituting or used principally for power generation purposes at the Lovett Generating Station located in Rockland County, New York (the "Lovett Generating Facility").  The purchase price for the Lovett Generating Facility was approximately $243,500,000.00.

(d)     <u>Gas Turbine and Hydroelectric Generating Station Sales Agreement</u>.  Mirant NY-Gen agreed to purchase the Hillburn Gas Turbine, the Shoemaker Gas

Turbine, the Mongaup Hydroelectric Station, the Swinging Bridge Hydroelectric Station, the Rio Hydroelectric Station and an interest in the Grahamsville Hydroelectric Station (collectively, the "Turbines and Hydroelectric Stations") for a purchase price of approximately $20,440,000.00.

6. On or after November 24, 1998, Southern Energy, Inc. ("SEI"), subsequently known as Mirant Corp. ("Mirant"), executed two guaranties (collectively, the "Guaranties"), whereby SEI guaranteed certain obligations of the New York Debtors under the Purchase Agreements.

(a) Bowline Guaranty. SEI guaranteed the payment and performance of Mirant Bowline under the Bowline Point Generating Station Sales Agreement and the Bowline Adjacent Property Agreement.

(b) Lovett, Gas Turbine and Hydroelectric Generating Facilities Guaranty. SEI guaranteed the payment and performance of Mirant Lovett under the Lovett Generating Station Sales Agreement and the payment and performance of Mirant NY-Gen under the Gas Turbine and Hydroelectric Generating Station Sales Agreement.

7. The Purchase Agreements were dated November 24, 1998. The Guaranties were also dated November 24, 1998. The New York Public Service Commission approved the transactions on June 24, 1999.

8. As discussed more fully in the Movants' concurrent Motion to Dismiss the First, Second, Third and Fourth Counterclaims, under applicable state law, the First, Second, Third and Fourth Counterclaims for Relief are all barred by applicable statutes of limitation and should be dismissed.

The Debtors' Bankruptcy Proceedings

9. On July 14, 2003 (the "Petition Date") and various dates thereafter, Mirant and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions before the

United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") for relief under chapter 11, title 11 of the United States Code, as amended (the "Bankruptcy Code").

   10. The Bankruptcy Court established December 16, 2003 as the last day to timely file a proof of claim against the Debtors relating to claims that arose before the Petition Date.

The Claims filed by Con Edison and O&R

   11. On or about December 3, 2003, O&R filed Claim No. 5517 against certain of the Debtors, seeking approximately $962,036.89 with respect to amounts due on utility accounts, as well as other sundry accounts, between O&R and the Debtors for products and services provided to the Debtors during 2002 and 2003.

   12. On or about December 16, 2005, O&R amended its Claim No. 5517 by the filing of Claim No. 8411 (the "O&R Claim") against certain of the Debtors.   Claim No. 8411 was filed in the amount of $962,036.89, plus contingent, unliquidated claims for indemnification and related liabilities based upon the Purchase Agreements and the Guaranties.   The filing of Claim No. 8411 was solely for the purpose of identifying potential contingent claims that may arise for indemnification and any other potential contingent recoveries under the Purchase Agreements and the Guaranties in the event of future conduct by the Debtors – such as the fraudulent conveyance claims brought in this Adversary.   The amendment was intended to be prophylactic in nature.   The liquidated portion of the O&R Claim relates to the same unpaid accounts that were the subject of Claim No. 5517.

   13. On or about December 12, 2003, Con Edison filed Claim No. 5908 seeking approximately $88,350.04 for unbundled transmission sales provided to certain of the Debtors during 2002 and 2003.

14.     On or about August 16, 2004, Con Edison filed Claim No. 8036 (the "Con Edison Claim") against certain of the Debtors, in the amount of approximately $85,842.80 for unbundled transmission sales provided during 2003.   The Con Edison Claim amended Claim No. 5908.

15.     On December 9, 2005, the Bankruptcy Court entered an order confirming the Amended and Restated Joint Plan of Reorganization for Mirant Corporation and its Affiliated Debtors, pursuant to which Mirant and its affiliated debtors, with the exception of the New York Debtors, emerged from bankruptcy as reorganized entities.

16.     The New York Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

The Debtors' Objection to the Claims and their Assertion of "Counterclaims"

17.     On July 13, 2005, after the Debtors' unsuccessful attempt to convince the Bankruptcy Court to grant them the ability to toll all statutes of limitations unilaterally, Mirant and the New York Debtors requested, and Con Edison and O&R agreed, to enter into a tolling agreement (the "Tolling Agreement"), tolling all statutes of limitations that had not expired as of June 30, 2005.   The Tolling Agreement effectively prolonged the two-year statutory grace period provided by 11 U.S.C. § 108 and preserved claims that were not already stale as of the Petition Date.   The Tolling Agreement was extended through and including May 1, 2006.

18.     On or about May 1, 2006, Mirant, Mirant Energy Trading, LLC ("MET") and the New York Debtors commenced this Adversary by the filing of an objection (the "Objection") to the Con Edison Claim and the O&R Claim (together, the O&R Claim and the Con Edison Claim are referred to as the "Claims").   None of the counterclaims, however, have any substantive or temporal relation to the Claims.   As discussed above, the Claims essentially

relate to open accounts between the Movants and certain of the Debtors for sales and services ancillary to the Purchase Agreements in the year preceding the Debtors' bankruptcy filing.

19.     In the First, Second, Third and Fourth Counterclaims for Relief (the "Fraudulent Transfer Counterclaims"), Plaintiffs Mirant and MET assert avoidance causes of action seeking recovery for certain allegedly fraudulent transfers occurring more than four years prior to the Debtors' bankruptcy.

20.     The Fifth Counterclaim for Relief is a state law cause of action brought by the New York Debtors for breach of contract, wherein the New York Debtors allege that the Movants are responsible for certain alleged environmental deficiencies and problems in connection with the Purchased Assets.[2]   These environmental clean-up claims bear no relation to the Claims asserted by the Movants.   Likewise, the environmental clean-up claims asserted pursuant to the Fifth Counterclaim for Relief are factually distinct from the Fraudulent Transfer Counterclaims.

21.     The Sixth Counterclaim for Relief is a request for a declaratory judgment brought by the New York Debtors pursuant to 28 U.S.C. § 2201, for purposes of determining questions of actual controversy between the parties.   The New York Debtors seek a declaratory judgment that (a) the alleged environmental deficiencies and problems in the Purchased Assets are Excluded Liabilities under certain of the Purchase Agreements; (b) the Movants, as sellers, are obligated to indemnify the New York Debtors for the liabilities, damages and costs arising out of the Excluded Liabilities; and (c) the Movants are required to defend the New York Debtors against the same.   Like the Fifth Counterclaim for Relief, the Sixth Counterclaim for

---

[2]  Any capitalized terms not defined herein adhere to the meanings ascribed to such terms in the Objection.

Relief bears no relation to the Claims filed by the Movants, nor does it bear any material relation to the Fraudulent Transfer Counterclaims.

22.     Lastly, the Seventh Counterclaim for Relief is a state law breach of contract action brought by the New York Debtors and Mirant alleging that the Movants are responsible for certain pro-rated taxes under the Bowline Point Generating Station Sales Agreement, the Lovett Generating Station Sales Agreement and the Gas Turbine and Hydroelectric Generating Station Sales Agreement.   The Seventh Counterclaim for Relief bears no relation to the Claims filed by the Movants, nor does it bear any material relation to the Fraudulent Transfer Counterclaims.

<u>Upon Withdrawal of the Reference of the Breach of Contract Counterclaims, the Movants Will Seek a Transfer of the Proceedings thereon to the New York District Court</u>

23.     Were it not for the pendency of the Debtors' bankruptcy cases in the Bankruptcy Court in the Northern District of Texas, there would be no justification for the causes of action represented by the Breach of Contract Counterclaims being brought in a Texas court. Each of the Purchase Agreements provides for exclusive jurisdiction before the state or federal courts of New York, as well as New York governing law:

> 11.7     <u>Governing Law</u>.   **This Agreement shall be governed by and construed in accordance with the laws of the State of New York** (regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law) as to all matters, including but not limited to matters of validity, construction, effect, performance and remedies, and **Seller and the Buyer hereby agree to irrevocably and unconditionally submit to the exclusive jurisdiction of any State or Federal court sitting in New York City over any suit, action or proceeding arising out of or relating to this Agreement.**   If requested by Seller, Buyer will consent to appointing an agent for service of process in New York City.

*See* § 11.7 of each of the Purchase Agreements (emphasis added).

24.     As discussed above, the Breach of Contract Counterclaims have absolutely no substantive relationship to the Claims filed by the Movants in the Debtors' bankruptcy proceedings.   Rather, the Breach of Contract Counterclaims primarily deal with what constitutes Assumed/Excluded Liabilities under the Purchase Agreements.   Primary negotiations regarding Assumed/Excluded Liabilities under the Purchase Agreements took place in New York.   The Purchased Assets, including all facilities and personal property covered by the Purchase Agreements, are all located in New York.   The location of the alleged wrong – e.g., the environmental conditions and other issues relating to the facilities – is in New York.   In fact, there are no operative facts alleged in the Objection, or more specifically in the Breach of Contract Counterclaims, that occurred in Texas nor does Texas have any connection to these disputes, save and except for the existence of the Debtors' bankruptcy proceedings.

25.     As the Movants intend to address in their motion to transfer, the courts of New York are most familiar with applicable New York law and most interested in any alleged environmental issues within that state.   Accordingly, in the interest of justice and for the convenience of the parties and witnesses, upon withdrawal of the reference, the Movants intend to file a motion to transfer the proceedings with respect to the Breach of Contract Counterclaims pursuant to 28 U.S.C. §§ 1404(a) and 1412[3] to the forum with the most significant ties to these causes of actions, the New York District Court.

---

[3] Section 1404(a) of title 28 provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."   28 U.S.C. § 1404(a).   Similarly, section 1412 of title 28 provides that a "district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."   28 U.S.C. § 1412.

# Argument

## Withdrawal of the Reference Is Warranted

26.     The Movants request that the reference be withdrawn with respect to the Breach of Contract Counterclaims pursuant to 28 U.S.C. § 157(d).   Pursuant to 28 U.S.C. § 157(d), a district court may, for cause shown, withdraw, in whole or in part, any case or proceeding referred to a bankruptcy court on its own motion or timely motion of any party.[4]   In deciding whether there is "cause" to withdraw the reference, a court should consider the following factors:

(a)     whether the matter involves core, non-core or mixed issues;

(b)     whether or not there has been a jury demand;

(c)     the effect of withdrawal on judicial efficiency;

(d)     reduction in forum shopping;

(e)     uniformity in bankruptcy administration;

(f)     fostering the economical use of the debtor's and creditor's resources; and

(g)     expediting the bankruptcy process.[5]

The requisite cause may be found "if one or more of these factors is present."[6]   No one factor is determinative, as a court may withdraw the reference even if a proceeding falls within a bankruptcy court's core jurisdiction.[7]

---

[4]  *See* 28 U.S.C. § 157(d).

[5]  *See Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985); *Mirant v. Southern*, 337 B.R. 107, 114-15 (N.D. Tex. 2006).

[6]  *United States v. Kaplan*, 146 B.R. 500, 504 (D. Mass. 1992).

[7]  *In re Parmalat Finanziaria S.p.A.*, 320 B.R. 46, 50 (S.D.N.Y. 2005); *In re Daewoo Motor America, Inc.*, 302 B.R. 308, 310 (C.D. Cal. 2003); *In re Chateaugay Corp.*, No. 00-CV-9429, 2002 WL 484950, at *7 (S.D.N.Y. Mar. 29, 2002).

27.     The word "proceeding" as used in section 157 refers to specific claims, causes of action, or grounds for relief, not to the entire action.[8]   In the context of a multiple-count adversary proceeding, such as here, each claim asserted in an adversary proceeding must be separately analyzed to determine whether it is a core or non-core proceeding.[9]   It is feasible to sever non-core claims from other core bankruptcy matters to allow litigation to proceed in another forum, with the enforcement of any judgment left to the bankruptcy court.[10]

The Breach of Contract Counterclaims Are Non-Core Proceedings

28.     The causes of action asserted by the Plaintiffs include both core and non-core claims.   The Movants recognize that the Fraudulent Transfer Counterclaims are core proceedings.   *See* 28 U.S.C. § 157(b)(2)(H) (noting that proceedings to determine, avoid or recover fraudulent conveyances are core proceedings).   However, despite being couched as

---

[8]  *Mirant v. Southern*, 337 B.R. at 116; *Ralls v. Docktor Pet Ctrs., Inc.*, 177 B.R. 420, 425 (D. Mass. 1995); *see also Halper v. Halper*, 164 F. 3d 830, 837 (3d Cir. 1999); *In re Systems Eng. & Energy Mgmt., Assoc., Inc.*, 252 B.R. 635, 642-44 (Bankr. E.D. Va. 2000).

[9]  *See, e.g., Halper*, 164 F.3d at 839 (adopting claim-by-claim analysis to determine extent of bankruptcy court's jurisdiction); *In re N. Parent, Inc.*, 221 B.R. 609, 626 (Bankr. D. Mass. 1998) ("This Court further recognizes that each of Debtor's fourteen causes of action will have to be separately analyzed to determine whether it falls within the bankruptcy court's core jurisdiction."); *Ralls*, 177 B.R. at 425 n.6 ("A district court must scrutinize each count and each asserted right for relief to determine which ones were properly before the bankruptcy judge for final resolution and which ones must receive de novo review.").

[10]  *See Crocker v. Borden, Inc.*, 852 F. Supp. 1322, 1331 (E.D. La. 1994) (court severed the main demand from certain third party claims, remanding the state court claims to the state court from which they were removed); *Apache Products Co. v. Employers Ins. of Wausau*, 154 F.R.D. 650, 660 (S.D. Miss. 1994) (court has power to sever claims of several defendants to create a new cause of action susceptible to transfer); *Amos v. Ford Motor Credit Corp.*, No. 4:03CV125-D-B, 2003 WL 23199863, at *4 (N.D. Miss. Dec. 29, 2003) (court may sever state law claims from federal claims); *In re Republic Reader's Serv., Inc.*, 81 B.R. 422 (Bankr. S.D. Tex. 1987); *Griffith v. Realty Executives, Inc.*, 6 B.R. 753, 756 (Bankr. D. N.M. 1980) (granting motion to sever based upon considerations of judicial economy and expedition).

"counterclaims" to the proofs of claim filed by Con Edison and O&R, the Breach of Contract

Counterclaims are indisputably non-core.

      29.     While section 157(b)(2)(C) provides that "counterclaims by the estate

against persons filing claims against the estate" are core proceedings, *see* 28 U.S.C.

§ 157(b)(2)(C), the analysis does not end there.   As the Fifth Circuit stated in *Wood v. Wood*,

825 F.2d 90 (5th Cir. 1987):

> [A] proceeding is core under section 157 if it invokes a substantive
> right provided by title 11 or if it is a proceeding that, by its nature,
> could arise **only** in the context of a bankruptcy case.[11]

Numerous courts of appeal have relied on this test to ensure that section 157(b) "core"

proceeding jurisdiction is exercised in a manner consistent with the Supreme Court's articulated

concerns in *Northern Pipeline Constr. Co. v. Marathon Pipeline*, 458 U.S. 50 (1982).[12]  In

---

[11] *Id.* at 97 (emphasis added); *see also In re U.S. Brass Corp.*, 301 F. 3d 296, 304 (5th Cir. 2002); *see also Halper*, 164 F.3d at 836 (citing cases); *In re Roddam*, 193 B.R. 971, 977 (Bankr. N.D. Ala. 1996); *In re Nanodata Computer Corp.*, 74 B.R. 766, 769-70 (W.D.N.Y. 1987) ("the court should consider the underlying nature of the cause of action itself and not merely the importance of that cause of action to the debtor or its creditors") (internal quotations omitted); *In re Sturm*, 66 B.R. 325, 327 (Bankr. N.D. Ill. 1986) ("jurisdiction may not flow to the bankruptcy court by way of counterclaim if it could not in the first instance"); *In re Yagow*, 53 B.R. 737, 739 (Bankr. D. N.D. 1985) (an expansive reading would ignore the jurisdictional proscriptions of *Marathon* and render the requirement of an independent jurisdictional basis meaningless); *see also In re American Energy, Inc.*, 50 B.R. 175, 180 (Bankr. D. N.D. 1985) (proceedings based solely on state law that only tangentially related to a pending bankruptcy proceeding do not confer jurisdiction on the bankruptcy court without an independent basis for federal jurisdiction).

[12] In *Marathon*, the Supreme Court found that the Bankruptcy Code impermissibly granted bankruptcy courts jurisdiction to enter final orders and judgments in matters that only state courts or Article III federal courts could decide. *See id.* at 90; *see also In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997) ("Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy …"); *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995) ("Core proceedings under 28 U.S.C. § 157 are those which arise only in bankruptcy or involve a right created by federal bankruptcy law."); *Security Farms v. International Bhd. of Teamster Chauffers, Warehouseman & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) ("Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.' "); *In re Gardner*, 913 F.2d 1515, 1518 (10th

explaining why the proceeding in *Wood* was non-core, the Fifth Circuit made the following instructive distinctions, which were reiterated by this Court in its decision in the *Mirant v. Southern* litigation:

> The plaintiff's suit is not based on any right created by the federal bankruptcy law. It is based on state created rights. Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court.

> * * *

> The substance of this action does not support a finding of core status. The essential issue in the proceeding is whether the Defendants are liable to the Plaintiff under state law. This suit does not raise as primary issues such matters as dischargeability, allowance of the claim, or other bankruptcy matters. Conceivably, a final judgment in this proceeding in the plaintiff's favor may lead to proceedings to allow the claim or discharge the debt. At this juncture, however, these concerns are speculative and insubstantial issues in the proceeding. The plaintiff's suit is not a core proceeding.[13]

30. A court evaluating whether a proceeding has core status must look to both the form and **substance** of the proceeding.[14] Moreover, the language of section 157(b)(2)(C) is not interpreted to include as a core matter **any** cause of action asserted by a debtor as a counterclaim.[15] Such an expansive reading would completely emasculate the jurisdictional

---

Cir. 1990) ("Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings."); *Sanders Confectionery Prods. v. Heller Fin.,* 973 F.2d 474, 483 (6th Cir. 1992) ("A core proceeding either invokes a substantive right created by federal bankruptcy law or [is] one which could not exist outside of the bankruptcy.").

[13] *Wood*, 825 F. 2d at 97-98 (footnotes omitted); *see Mirant v. Southern*, 337 B.R. at 118.

[14] *Wood*, 825 F.2d at 97; *Mirant v. Southern*, 337 B.R. at 117.

[15] *See Roddam*, 193 B.R. at 977; *Nanodata Computer Corp.*, 74 B.R. at 769-70; *Sturm*, 66 B.R. at 327 ("jurisdiction may not flow to the bankruptcy court by way of counterclaim if it could not in the first instance"); *Yagow*, 53 B.R. at 739.

proscriptions of *Marathon*.[16]  "An inventive debtor would be free to use section 157(b)(2)(C) as a vehicle to avoid the jurisdictional proscriptions of the *Marathon* case, a result which cannot be countenanced in face of the Supreme Court's position regarding the jurisdictional perimeters of bankruptcy judges."[17]

31.    In the instant case, the Breach of Contract Counterclaims do not "implicate the peculiar rights and powers of bankruptcy," nor do those counterclaims "depend upon federal bankruptcy laws for their existence."[18]  Rather, they are state law contract claims that could and would proceed in another court, specifically in New York, in the absence of a bankruptcy.  None of the Breach of Contract Counterclaims "involves a substantive right provided by title 11, nor is of a nature that it could arise only in the context of a bankruptcy case or based on any right created by federal bankruptcy law.  Rather, each of them is based on a state-created right", i.e., a private breach of contract.[19]  Likewise, the fact that the successful prosecution of the Breach of Contract Counterclaims may enrich the Debtors' estate does not make the claims asserted in the action core.[20]

32.    Because the Breach of Contract Counterclaims are non-core actions governed by state law, it would be far more efficient for a district court to decide such causes of

---

[16] *Yagow*, 53 B.R. at 739.

[17] *Id.*

[18] *See Mirant v. Southern*, 337 B.R. at 117.

[19] *See id.*

[20] *In re Southmark Corp.*, 163 F.3d 925, 931 (5th Cir. 1999) (citing *Marathon*); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (the fact that an action may benefit estate does not make action core; such a ruling would "wipe out the underpinnings of *Marathon*") (internal citations omitted).

action rather than having a bankruptcy court submit proposed findings of facts and conclusions of law to the district court.[21]

<u>The Movants Are Entitled to, and Will Seek, a Trial by Jury</u>

33.    With respect to the second *Holland* factor, the Movants are entitled to, and will seek, a trial by jury on the Breach of Contract Counterclaims.   The Seventh Amendment preserves a right to a jury trial on issues of fact in suits for breach of contract damages between private party litigants.[22]

34.    The Movants have not waived their rights to a jury trial with respect to the Breach of Contract Counterclaims by the filing of the Claims.   The Supreme Court has made clear that any waiver of constitutional rights must be voluntarily, intelligently and knowingly made.[23]   As this Court stated in its decision in *Mirant v. Southern*, the filing of a proof of claim in a bankruptcy case does not constitute a waiver of a right to a jury trial.[24]   The Fifth Circuit has reiterated that "the right of a jury trial is fundamental, [and] courts [must] indulge every

---

[21]  *See* 28 U.S.C. § 157(c) (absent consent, a bankruptcy judge cannot enter a final judgment in a non-core proceeding, but rather must submit proposed findings of fact and conclusions of law to the district court such that a district court may enter the judgment).   The Movants do not consent to the Bankruptcy Court entering a final judgment with respect to the Breach of Contract Counterclaims.

[22]  U.S. CONST. amend. VII; *Mirant v. Southern*, 337 B.R. at 120 (where a plaintiff seeks monetary relief, such action is legal in character and defendants are entitled to a jury trial); *In re White*, 172 B.R. 841, 844 (S.D. Miss. 1994) (a breach of contract cause of action is a non-core matter which would conventionally be urged in a district court and constitutionally be determined by a jury).

[23]  *Fuentes v. Shevin*, 407 U.S. 67, 94-95 (1972); *Mirant v. Southern*, 337 B.R. at 121.

[24]  *See* 337 B.R. at 121 (the court will not presume that a litigant "surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process") (citing *In re Rickel & Assoc., Inc.*, 320 B.R. 513, 518 (Bankr. S.D.N.Y. 2005)).

reasonable presumption against waiver."[25]   "Maintenance of the jury as a fact-finding body is of

such importance and occupies so firm a place in our history and jurisprudence that any seeming

curtailment of the right to a jury trial should be scrutinized with the utmost care."[26]

35.     The Second Circuit stated in *Germain v. Conn. Nat'l Bank,* 988 F.2d 1323,

1330 (2d Cir. 1993), that "neither precedent nor logic supports the proposition that either the

creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is

filed."[27]   "For a waiver to occur, the dispute must be a part of the claims-allowance process or

offset the hierarchical reordering of the creditors' claims."[28]   The connection between the

Claims and the bankruptcy case does not "magically convert the legal claims into equitable

claims."[29]   A creditor that files a proof of claim is entitled to a jury trial for disputes that are

"only incidentally related to the bankruptcy process."[30]

36.     Resolution of the legal claims presented by virtue of the Breach of

Contract Counterclaims "is not necessary for determination as to the actual allowance or

disallowance of [the Claims]."[31]   As discussed above, the Breach of Contract Counterclaims

---

[25] *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998) (citing *Bowles v. Bennett*, 629 F.2d 1092, 1095 (5th Cir. 1980)).

[26] *Id.* (citations omitted).

[27] *See also Rickel & Assoc.*, 320 B.R. at 517-18.

[28] *Id.*

[29] *Id.* (quoting *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).

[30] *Id.* at 1329-30; *see also In re Crown Vantage, Inc.,* No. C 02-03836, 2002 WL 32872440 at *3 (N.D. Cal. Dec. 16, 2002) (creditor did not waive right to jury trial by filing proof of claim because causes of action asserted against the creditor had only a "negligible impact" on the bankruptcy process of allowance and disallowance of claims).

[31] *See Mirant v. Southern*, 337 B.R. at 121 (citing *In re Bryant*, 626 F.2d 492, 494 (5th Cir. 1980)).

have no substantive or temporal relation to the Claims. The Claims are for amounts due on open contracts during 2002 and 2003. The Breach of Contract Counterclaims relate to the parties' responsibilities under contracts with respect to certain environmental and tax issues.

37.     "[T]he admittedly desirable end of expeditious administration of bankruptcy estates should not be allowed effectively to eliminate the protection afforded litigants by the traditional safeguards of a plenary suit, with the right to a trial by jury and cross-examination of witnesses."[32]     "[T]he mere fact that the outcome of a dispute could have the effect of enlarging the estate does not mean that the dispute will have any effect on the allowance of a disputant's claims in bankruptcy."[33]

38.     The fact that the Breach of Contract Counterclaims were couched as "counterclaims" in the first instance is merely an artifice by the Debtors to color them as "core proceedings." At best, the Breach of Contract Counterclaims relate only incidentally, if at all, to the Claims and further only negligibly impact the entirety of the bankruptcy process of the allowance and disallowance of claims. Accordingly, the Movants clearly have not waived their rights to a jury trial with respect to the Breach of Contract Counterclaims. Satisfaction of this factor alone entitles the Movants to withdrawal of the reference.[34]

The Movants Are Not Forum Shopping

39.     The Movants do not seek to avoid the Bankruptcy Court. Indeed, with respect to the core Fraudulent Transfer Claims, the Movants are proceeding before the Bankruptcy Court. Ultimately, the Movants will seek to have the Breach of Contract

---

[32] *In re Behring & Behring*, 445 F.2d 1096, 1099 (5th Cir. 1971) (distinguishing the Supreme Court's decision in *Katchen v. Landy*, 382 U.S. 323 (1966)).

[33] *Mirant v. Southern*, 337 B.R. at 122 (citing *Germain*, 988 F.2d at 1327).

[34] *Id.* at 122 (citing *In re Clay*, 35 F.3d 190, 195, 197-98 (5th Cir. 1994)).

Counterclaims tried in the New York District Court – (a) the forum whose state substantive law contractually applies to the claims, (b) the forum the parties contractually selected, (c) a forum where the Movants can be afforded a trial by jury, and (d) the state where the underlying transactions and occurrences took place and the vast majority of witnesses and evidentiary proof resides.

The Remaining *Holland* Factors Favor Withdrawal of the Reference

40.     Because of the prevalence of state law issues with respect to the Breach of Contract Counterclaims, uniformity in bankruptcy administration is not implicated.   Likewise, litigation of the Breach of Contract Counterclaims will have no bearing on the overall expeditiousness of the bankruptcy process.   Mirant has already reorganized.   The New York Debtors' bankruptcy cases have been pending for approximately three years.   This litigation was not brought until 2006.   As such, it is plain that this litigation has no material impact on the overall bankruptcy proceedings.

41.     Moreover, as is the case with many of the Mirant Debtors that have reorganized to date, including Mirant, there is much litigation ongoing in and outside of the Bankruptcy Court.   Litigation of the Breach of Contract Counterclaims outside of the Bankruptcy Court will not impact the overall administration of the bankruptcy.

42.     With respect to the use of parties' resources, Mirant and the New York Debtors are part of a national company, which can expect to and does participate in litigation in various courts and venues nationwide.   Should litigation of the Breach of Contract Counterclaims be tried in this Court or the New York District Court, there will be no measurable impact on the Debtors' resources.

## Conclusion

43.     Absent the Debtors' bankruptcy, the Breach of Contract Counterclaims would have been brought in a state or federal court in New York.   The pendency of the New York Debtors' bankruptcy cases and the fact that Mirant was once in bankruptcy does not alter the substance of the causes of action, nor does the fact that the Breach of Contract Counterclaims are couched as counterclaims to proofs of claim.   The Breach of Contract Counterclaims are state law contract claims relating to environmental and tax issues which do not constitute core proceedings.   They do not implicate any federally-created or bankruptcy-related rights. Accordingly, this Court should withdraw the reference to the Bankruptcy Court with respect to the Breach of Contract Counterclaims.

44.     Furthermore, as will be further discussed in the Movants' subsequent motion to transfer, because the Breach of Contract Counterclaims are most substantively related to and governed by New York law, this Court should ultimately transfer the proceedings with respect to the Breach of Contract Counterclaims to the New York District Court in the interest of justice and for the convenience of the witnesses and the parties, as it is the forum with the most significant connection to these causes of action.

WHEREFORE, the Movants respectfully request that the Court enter an order withdrawing the reference to the Bankruptcy Court with respect to the Fifth, Sixth and Seventh Counterclaims and granting the Movants such other and further relief as they may show themselves justly entitled.

Dated: July 31, 2006

Respectfully submitted,


/s/ Martin A. Sosland
Martin A. Sosland
Texas State Bar No. 18855645
Vance L. Beagles
Texas State Bar No. 00787052
Michelle V. Larson
Texas State Bar No. 00796928
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone:   (214) 746-7700
Facsimile:    (214) 746-7777

Theodore E. Tsekerides
Timothy Q. Karcher
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:    (212) 310-8007

ATTORNEYS FOR CONSOLIDATED EDISON
COMPANY OF NEW YORK, INC. and ORANGE
AND ROCKLAND UTILITIES, INC.

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that on July 31, 2006, I contacted Jeff Prostok, counsel for the New York Debtors, regarding the relief sought in this Motion.   I was advised that the New York Debtors and Mirant Corp. oppose the relief sought in this Motion.


/s/ Martin A. Sosland
_____
Martin A. Sosland

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that I provided a true and correct copy of the foregoing to the following persons via First Class U.S. Mail and email on the 31st day of July, 2006:

/s/ Michelle V. Larson
Michelle V. Larson

Thomas E. Lauria
White & Case LLP
Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL 33131
tlauria@whitecase.com

Bryan A. Merryman
Craig Averch
Earle Miller
White & Case LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA   90071-2007
bmerryman@whitecase.com
caverch@whitecase.com
emiller@whitecase.com

J. Robert Forshey
Jeff P. Prostok
Blake L. Berryman
Forshey & Prostok, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
bforshey@forsheyprostok.com
jprostok@forsheyprostok.com